IN THE DISTRICT FOR THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>Plaintiff<br><br>v.<br><br>**ALONSO HERNANDEZ HERNANDEZ**<br>Defendant | Case No. 23-10 (WAL-EAH) |

**Sentencing Memorandum**

**TO THE HONORABLE COURT:**

  **COME NOW** defendant **Alonso Hernandez Hernandez**, via the undersigned counsel who respectfully **STATES** and **PRAYS:**

Introduction

  1. Mr. Hernandez Hernandez is to be sentenced on April 9, 2024.

  2. To assist the Court in the exercise of its sentencing discretion under 18 USC 3553, the defense files the present sentencing memorandum.

Who is Alonso Hernandez Hernandez

  3. Alonso Hernandez Hernandez is a humble man, a poor man.

  4. Poverty is an elusive concept. For some it can be living on food stamps. For Mr. Hernandez Hernandez poverty means working all day, usually up to 15 hours, and making less than $8.00 a day. Poverty means a partly built house, a family that is desperate for money to simply subsist and seeing the heavens open when offered $20,000 that he always knew inside that he would never see, but the possibility being impossible to pass.

  5. Life as a fisherman is hard. Unexpected and unsafe. There are no assurances that your work will yield anything. But most days you can at least get some food. Being a cab driver was no

better. Slightly safer, although he got robbed on many occasions.

6. Having a hardscrabble childhood is difficult. For some it might mean a single room house. For Mr. Hernandez Hernandez it meant growing up in a home has a plastic tarp for a roof, no running water and have an outhouse for the restroom was the regular event, not the result of a hurricane.

7. Options is an elusive concept. For some it means deciding between jobs. Mr. Hernandez Hernandez left school in the 3rd grade, when he was 8 years old. Not because he was a bad student or because he did not want to go. He did it to seek employment. Mr. Hernandez-Hernandez is unable to read. Upon leaving school, he sought employment in construction and fishing. Options for Mr. Hernandez Hernandez were different, just different backbreaking, bad paying jobs.

8. All the above, to say that Mr. Hernandez Hernandez is a man who life placed in a horrible situation. He choose to place himself in the wrong place for desperate reasons. This is not written to invoke pity, but to put his actions in context.

<u>Mr. Hernandez Hernandez is a Minor Participant</u>

9. Guideline 3B1.2 states:

"Based on the defendant's role in the offense, decrease the offense level as follows:

(a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.

(b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

In cases falling between (a) and (b), decrease by 3 levels."

10. The framework for the implementation Guideline 3B1.2(b) is found in Application Note 3(A) to 3(C) of the same, which states in the pertinent parts:

Case: 1:23-cr-00010-WAL-EAH   Document #: 109   Filed: 03/29/24   Page 3 of 9

Notice of …
Crim. No. 23-10 (WAL-EAH)                                                                 Page 3

3.   <u>Applicability of Adjustment</u>.—

(A)   <u>Substantially Less Culpable than Average Participant</u>.—This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity.

A defendant who is accountable under §1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in the criminal activity may receive an adjustment under this guideline. For example, a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs and who is accountable under §1B1.3 only for the quantity of drugs the defendant personally transported or stored may receive an adjustment under this guideline.

….

"(C)   <u>Fact-Based Determination</u>.—The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case.

In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:

(i) the degree to which the defendant understood the scope and structure of the criminal activity;

(ii) the degree to which the defendant participated in planning or organizing the criminal activity;

(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v) the degree to which the defendant stood to benefit from the criminal activity.

For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.

Case: 1:23-cr-00010-WAL-EAH    Document #: 109    Filed: 03/29/24    Page 4 of 9

Notice of …
Crim. No. 23-10 (WAL-EAH)                                                                                           Page 4

> The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity."

11. Applying this framework to the case, it is clear that Mr. Hernandez Hernandez complies with all five factors. It is clear that Mr. Hernandez Hernandez was a transporter, used by the owners of this shipment for a single specific purpose with a high degree of deniability. He was intentionally left in the dark about the larger scheme of the organization, so that the organization would not be exposed if he were to be arrested as he was.

12. The Government has agreed, in the sentencing memorandums of other co-defendants in this case, that none of the persons arrested here had any decision-making authority in the context of the larger conspiracy. In the *Government's Sentencing Memorandum* for co-defendant Orellana-Orellana, at docket no. 85. The Government stated:

> 4. Minor Role Adjustment Should Apply
>
> Regarding the U.S.S.G. §3B1.2 Mitigating Role factors, as they pertain to this Defendant, the investigation did not reveal that defendant exercised decision making authority in the context of the entire drug trafficking venture. Defendants were found on board a vessel with approximately 4,104 pounds of marijuana, well worth millions of dollars. **Defendant stood to gain very little compared to the overall value of this load to the drug trafficking organization, which the Government will expound upon at sentencing. Defendant was essentially a small player in the overall hierarchy of the drug trafficking organization, which typically involves growing, processing and shipping the product, wholesale distribution and retail distribution. There is no indication Defendant knew of any other workings of the drug organization as a whole, or stood to benefit in any substantially larger share of the profits.** The Government recommends minor participant role adjustment under §3B1.2(b).

13. In the *Government's Sentencing Memorandum* of co-defendant Coto Lopez, at docket no. 74, the Government made an identical recommendation.

Notice of …
Crim. No. 23-10 (WAL-EAH) Page 5

14. The Government is not making a similar determination in this case. However, a close reading of the facts of the case, in relation to the minor participant adjustment, shows that there is no difference between the conduct of Mr. Hernandez Hernandez and the conduct of his two co-defendants. All three of them were doing exactly the same thing. All stood to gain very little compared to the overall value of this load to the drug trafficking organization. All were essentially small players in the overall hierarchy of the drug trafficking organization, which typically involves growing, processing and shipping the product, wholesale distribution and retail distribution. There is no indication that any of them knew of any other workings of the drug organization as a whole or stood to benefit in any substantially larger share of the profits.

15. Mr. Hernandez Hernandez describes his participation at paragraph 16 of the *Amended Presentence Report*, at docket no. 78:

> The defendant stated that he was recruited and offered a job opportunity in Colombia. He was offered to be paid $25,000 because he's a good captain/operator. His family was threatened, and he feared for their safety. Mr. Hernandez-Hernandez felt he had no other choice. While in Colombia, he was mistreated and given spoiled food. He concluded by saying he was scared and forced to participate. The defendant denied being the captain of the vessel.[1]

16. There is no indicia in his description of any larger activity. The discovery reports themselves neither provide them.

17. All the reports of interviews of the three defendants, interviewed independently, describe that they were recruited in a similar manner, kept in confinement in a similar manner,

---

[1] When originally interviewed Mr. Hernandez Hernandez stated he was the captain. However he was making the statement in the commonplace meaning the person handling the vessel, which is a small yola. The statement was obviously not made in the legal meaning of the term, and after being in MDC Guaynabo and being appraised by other inmates what being the captain meant – the leader of a conspiracy – he then stated that he was not the captain.

Case: 1:23-cr-00010-WAL-EAH Document #: 109 Filed: 03/29/24 Page 6 of 9

Notice of …
Crim. No. 23-10 (WAL-EAH) Page 6

were given orders in a similar manner, were offered similar amounts of money. They are in the same place.

18. As stated above, when all is read in conjuction, it is clear that the Government is acknowledging that one thing is to be the person who holds the rudder of the boat and another totally different is to be a leader within the context of the conspiracy writ large. In their statements it is clear that all five factors of Guideline 3B1.2(b) are complied with.

19. It is clear that Mr. Hernandez Hernandez did he grow it, prepared it for same, made the negotiations to sell it, made the arrangements for transportation, laundered proceeds related to it, protect it in stash houses, or run paramilitaries and corrupt politicians in order to protect it. He is precisely the type of low-information, first-time courier deserving relief.

20. This type of case illustrates the gulf between low-skilled couriers and the masterminds who are really running these operations. Men like Mr. Hernandez Hernandez are often "given opportunities" by the drug cartels as nautical drug mules because of their impoverished status and knowledge of the sea. They will work under any conditions. Seldom if ever do they know the gross or net weight of the drugs they transport nor do they possess detailed knowledge of a drug cartel's activities.

21. It should be noted that a person be given both a special skills role enhancement and a minor participant reduction. The Guidelines explicitly adopt this position in application note 3(c) to Guideline 3B1.2(b). Indeed, that is the position implicitly advocated by the Government in the sentencing memorandum cited *supra*.

22. Based on the above arguments, it is requested that the Court determine that Mr. Hernandez Hernandez is a minor participant in the conspiracy and award a minor participant

reduction under Guideline 3B1.2(b).

## Adjusted Guidelines Calculation

23. The Guidelines, as proposed in the *Amended Presentence Report* and as modified by the arguments above, are:

| | |
|---|---|
| Base Offense Level: The guideline for a violation of 46 U.S.C. § 70503(a)(1) is USSG §2D1.1. The base offense level is 30. USSG §2D1.1(c)(5). That section provides that an offense involving at least 1,000 KG of Marihuana, but less than 3,000 KG has a base offense level of 30. In this offense, 1,400 kilograms of Marihuana was seized. | 30 |
| Specific Offense Characteristics: If the defendant acted as a pilot, copilot, captain, navigator, flight officer, or any other operation officer aboard any craft or vessel carrying a controlled substance, increase by 2 levels. USSG §2D1.1(b)(3)(C). | +2 |
| Adjustment for Role in the Offense: Minor participant, USSG 3B1.2(b). | -2 |
| Chapter Four Enhancement: The defendant meets the criteria at USSG §§4C1.1(a)(1)-(10). Therefore, the defendant is a Zero-Point Offender, and the offense level is reduced by two levels. USSG §§4C1.1(a) and (b). | -2 |
| Acceptance of Responsibility: The defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. USSG §3E1.1(a). | -2 |
| Acceptance of Responsibility: The defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty. Accordingly, the offense level is decreased by one additional level. USSG §3E1.1(b). | -1 |
| Total Offence Level | 25 |

24. A level 25, when combined with a criminal history category of I exposes Mr. Hernandez Hernandez to a term of imprisonment of 57 to 71 months of imprisonment.

## Propriety of a Variant Sentence

25. The Guidelines, as calculated, yield a mathematically reached sentence.

26. The Guidelines, however, do not recognize the reality that such a sentence is disproportionate to the sentence imposed to the other co-defendant for essentially the same

Case: 1:23-cr-00010-WAL-EAH  Document #: 109  Filed: 03/29/24  Page 8 of 9

Notice of …
Crim. No. 23-10 (WAL-EAH)                                                                                            Page 8

conduct. Co-defendant no. 1, Luis Orellana-Orellana, was sentenced to 37 months of imprisonment while co-defendant no. 2, Keyran Coto-Lopez, was sentenced to 46 months of imprisonment.

27. 18 USC 3553(a)(6) directs the courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct".

28. Although the undersigned obviously does not have access to co-defendant's Coto Lopez *Presentence Report*, in the Government' sentencing memorandum, at footnote 5, the Government states that Coto Lopez received a 2-point increase based on special offense characteristic of USSG §2D1.1(b)(3)(C). This is presumably the same numeric increase that Mr. Hernandez Hernandez received, although for a different reason.

29. Given this mandate, and the similarities in conduct and behavior, should move the Court to impose a similar sentence. The defense moves the Court to a two-point downward departure, to level 23, and to impose a sentence at the lower end of the Guideline.

**WHEREFORE**, it is respectfully requested that this Honorable Court take notice of the above informed and grant the remedy requested.

      **RESPECTFULLY SUBMITTED**, In San Juan, Puerto Rico, this Saturday, July 1, 2023.

**MATOS DE JUAN LAW OFFICE**　　　　　　　　　　　　　*S/Juan F. Matos de Juan*
255 Ponce de León Avenue　　　　　　　　　　　　　　　**JUAN F. MATOS DE JUAN**
MCS Plaza, Suite 1210　　　　　　　　　　　　　　　　　**USDC-PR NO. 207605**
San Juan, P.R. 00917

Notice of …
Crim. No. 23-10 (WAL-EAH) Page 9

Office 787-998-1033 / 787-998-1034
Cel. 787-509-2335
matosd@sgmr.net